UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **BARBARA ANN COWAN MAXIE** | **CASE NO. 3:19-CV-00482** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ANDREW SAUL, COMMISSIONER,** <br> **U.S. SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

On May 27, 2016, Barbara Ann Maxie filed the instant application for Title II Disability Insurance Benefits. (Tr. 71, 224-228). She alleged disability as of November 13, 2015, because of essential hypertension, cancer (underactive thyroid, stage 1), depression, malaise, fatigue, asthma, chest pains, arthritis in her joints, lymphoma, hypothyroidism, chronic obstructive pulmonary disease, dyslipidemia, and paresthesia. (Tr. 244, 247). The state agency denied the claim at the initial stage of the administrative process. (Tr. 160-175). Thereafter, Maxie requested and received a hearing on January 19, 2018, before an Administrative Law Judge ("ALJ"). (Tr. 120-159). In a May 17, 2018, written decision, the ALJ determined that Maxie was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that existed in significant numbers in the national economy. (Tr. 68-80). Maxie appealed the adverse decision to the

Appeals Council. On February 12, 2019, however, the Appeals Council denied Maxie's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-4).

On April 16, 2019, Maxie filed the instant, pro se complaint for judicial review of the Commissioner's final decision. Following submission of the administrative transcript and supporting memoranda, the matter is now before the court.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical

2

or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

### I.  Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 73). At step two, he found that the claimant suffered severe impairments of degenerative joint disease in the right ankle, degenerative disc disease in the cervical spine, lumbar degenerative changes, asthma, chronic obstructive pulmonary disorder, and obesity. (Tr. 74-75).[1] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 75).

### II.  Residual Functional Capacity

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform the full range of light work,[2] but never climb ladders, ropes, or scaffolds,

---

[1] The ALJ further found that the claimant's medically determinable impairments of hypertension, hypothyroidism, gastroesophageal reflux disease ("GERD"), myopia, astigmatism, cataracts, sensory hearing loss in the right ear, diabetes mellitus, and depression were not severe. *Id*.

[2] Light work entails:

4

with the ability to only occasionally climb ramps or stairs. (Tr. 76-78). The claimant also was limited to occasional balancing, stooping, crouching, kneeling, and crawling. *Id*. Moreover, she was restricted to occasional exposure to atmospheric conditions, such as fumes, noxious odors, dusts, mites, gases, and poor ventilation. *Id*.

## III. Steps Four and Five

With the assistance of a vocational expert ("VE"), the ALJ determined at step four of the sequential evaluation process that the claimant was unable to perform her past relevant work. (Tr. 78-79). Accordingly, he proceeded to step five. At this step, the ALJ determined that the claimant was an individual of advanced age, with at least a high school education, and the ability to communicate in English. *Id*. The VE testified that plaintiff obtained the following skills from her past relevant work: active listening, social perception, instruction, persuasiveness, speaking, decision-making, and complex problem solving. (Tr. 79-80, 151-152).

The ALJ next observed that given the claimant's vocational factors, and if she had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. § 404.1569; Rules 202.07, Table 2, Appendix

---

. . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

2, Subpart P, Regulations No. 4; Tr. 79-80. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted the VE to determine whether, and to what extent the additional limitations eroded the occupational base for light work. *Id*. In response, the VE identified the representative jobs of playroom attendant, *Dictionary of Occupational Titles* ("DOT") Code # 359.677-026 - light; and companion, DOT # 309.677-010 – light, that were consistent with the ALJ's RFC and the claimant's vocational profile. (Tr. 78-80, 150-157).[3]

## Analysis

Pursuant to the court's scheduling order, plaintiff was required to submit a brief that *inter alia*, set forth "**specific errors** committed at the administrative level which entitle plaintiff to relief." (May 8, 2019, Sched. Order [doc. # 7]). The order cautioned that "[t]he court will consider only those errors **specifically identified** in the briefs. A general allegation that the ALJ's findings are unsupported by substantial evidence, standing alone, is insufficient to invoke the appellate function of the federal court." *Id*.

From what the court may discern by way of plaintiff's memoranda and submissions, she primarily relies on new evidence that post-dates the relevant period to argue that she is disabled. That argument is addressed in further detail below. However, the court also will briefly review the ALJ's decision for legal error and sufficiency of the evidence.

As recited earlier, at step two of the sequential evaluation process, the ALJ found that the

---

[3] The VE responded that for the play room attendant job, there were 21,375 positions available nationwide. (Tr. 78-80, 150). In addition, for the companion job, there were 94,471 positions available nationally. *Id*. This incidence of work constitutes a significant number (and range) of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number); *see also Susan M. v. Berryhill*, No. 17-1083, 2018 WL 4692468, at *8 (D. Or. Aug. 24, 2018), R&R adopted, 2018 WL 4690361 (D. Or. Sept. 28, 2018) (two jobs constitute a significant range of jobs as required under Rule 202.00(c)).

claimant's medically determinable impairments of medically determinable impairments of hypertension, hypothyroidism, GERD, myopia, astigmatism, cataracts, sensory hearing loss in the right ear, diabetes mellitus, and depression were not severe. (Tr. 74-75).

In assessing the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.1985)). However, when, as here, the ALJ's analysis proceeds beyond step two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required. *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, n. 1 (5th Cir. 1987). Rather, under these circumstances, the effect of the ALJ's step two determination is measured by whether his step three finding and RFC are supported by substantial evidence. This is so because once at least one severe impairment is determined to exist, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. *See* 20 C.F.R. §§ 404.1545, 416.945. Indeed, the ALJ recited the foregoing regulation, and proceeded to consider the medical record and the aggregate impact of plaintiff's impairments. *See* Tr. 73.[4]

To establish that a claimant's impairments meet or medically equal a listing at step three of the sequential evaluation process, the claimant must provide medical findings that support all

---

[4] The ALJ applied the psychiatric review technique to plaintiff's mental impairment, but found that it was not severe. (Tr. 75). The ALJ's determination is supported by the findings of the non-examining agency psychologist, Joseph Tramontana, Ph.D., who opined that plaintiff did not have a medically determinable mental impairment at all. (Tr. 167). Furthermore, plaintiff testified that she did not require any mental health treatment. (Tr. 141).

7

of the criteria for a listed impairment (or most similarly listed impairment).  *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).   In determining whether a claimant's impairment(s) equals a listing, all evidence in the case record about the claimant's impairments and their effects are considered.   20 C.F.R. § 404.1526(c).   An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify.   *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990).   If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present.   *Selders*, 914 F.2d at 620.   Here, plaintiff neither argues, nor makes the requisite showing that her impairments are of listing-level severity.

The court further finds that the ALJ's residual functional capacity assessment ("RFC") is supported by substantial evidence.   In his decision, the ALJ reviewed the available evidence, including the hearing testimony, plaintiff's activities of daily living, treatment records, the results of a consultative physical examination, and the impressions of the agency physician.   (Tr. 76-78).

For instance, at the request of the state agency, plaintiff was seen by Barry Tillman, M.D., for a consultative physical examination on September 26, 2016.   (Tr. 533-537).   Plaintiff informed Tillman that she was unable to work because of shortness of breath.   *Id*.   She reported body aches that were fairly defuse.   *Id*.   She also stated that her left side was painful all of the time.   *Id*.   Upon examination, however, she had a normal station and gait.   *Id*.   She also was able to rise to and from the examining table, without assistance.   *Id*.   Her extremities were negative for cyanosis, clubbing, or edema.   *Id*.   Flexion of the lumbar spine was 80 degrees. *Id*.   Dexterity and fine motor movements were normal bilaterally.   *Id*.   She had 140 degrees of flexion in her knees, bilaterally.   *Id*.   Tillman remarked that although plaintiff carried a

diagnosis for COPD, she had no wheezing at the time of the examination. *Id*. She also had fairly non-specific musculoskeletal pain on the left side, with no corresponding physical examination deficits identified. *Id*. He further diagnosed history of thyroid cancer, without evidence of recurrence; depression related to her decreased functional status; decreased distant visual acuity partially corrected by lenses;[5] obesity; and hypertension without evidence of end organ damage. *Id*.

On November 7, 2016, at the behest of the state agency, plaintiff underwent a pulmonary function test which revealed no obstructive or restrictive defects. (Tr. 551-556).

On November 15, 2016, non-examining agency physician, Hollis Rogers, M.D., reviewed the record, including the findings of the consultative physician, together with the pulmonary function test, but determined that plaintiff had no severe physical impairment. (Tr. 167-168).

In his decision, the ALJ assigned "little weight" to Dr. Rogers' findings because later medical records showed degenerative changes to plaintiff's back and ankle. (Tr. 78). Nonetheless, the ALJ relied on plaintiff's daily activities and hearing testimony to find that she retained an RFC for a reduced range of light work. *See* Tr. 78-78, 144-145. Furthermore, there is no indication that any other physician of record assigned any limitations of functioning greater than those recognized by the ALJ for the period at issue.[6]

At step five, the ALJ posited hypothetical(s) to a vocational expert that contemplated

---

[5] Plaintiff had 20/20 vision at her eye examination two weeks earlier. (Tr. 538-543).

[6] On March 13, 2019, Dr. Colvin provided plaintiff with a short note written on his prescription pad, which stated that plaintiff had severe asthma and was unable to work. *See* Pl. Brief, Exh. 9-1, pg. 4. However, this note is outside of the relevant period and, therefore, does not provide a basis for remand. *See* discussion, *infra*. Moreover, a physician's statement that a claimant is "disabled" or "unable to work" is not accorded any special significance under the regulations. *See* 20 C.F.R. § 404.1527(d)(1)-(3); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

9

plaintiff's vocational factors and RFC. It is manifest that a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). Here, the ALJ's hypothetical(s) to the vocational expert substantially incorporated the limitations recognized in his residual functional capacity assessment, and that assessment is supported by substantial evidence. *See* discussion, *supra*.

Finally, in connection with her request for review to the Appeals Council, plaintiff submitted additional medical records from treatment visits that post-date the ALJ's decision. The regulations provide that the Appeals Council will review a case, among other reasons, if "[s]ubject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).

The Appeals Council considered the additional evidence submitted by plaintiff but determined that it either would not have changed the outcome of the decision or that it did not relate to the period at issue. (Tr. 2). For example, in one record, plaintiff presented at the Catahoula Parish Hospital District No. 2 on March 28, 2018, with complaints of constant headaches. (87-94). The provider noted that plaintiff did not "mention a whole lot about this headache . . . during the exam, mainly wanted the note for food stamp worker." *Id*. The provider added that plaintiff wanted a note sent to the "Food Stamp Worker" stating that she was unable to work. *Id*. When asked why she was unable to work, plaintiff replied that she did breathing treatments, but was unable to do them at work. *Id*. Plaintiff then conceded that she did not implement the nebulizer treatment every day, only when her asthma flared up. *Id*.

Similarly, on April 5, 2018, plaintiff saw Logan Atkins, M.D., for purposes of

10

establishing a primary care physician. (Tr. 117-119). Atkins noted that plaintiff reported a disagreement with her former PCP, Dr. Tillman, who told her that she did not have asthma. *Id*. Atkins noted that one year earlier, plaintiff had requested a note from Dr. Tillman to help her qualify for food stamps, stating that she could not work because of her asthma. *Id*. The provider was skeptical of this claim. *Id*.

On May 21, 2018, plaintiff underwent a diabetic eye evaluation, which found no diabetic retinopathy, visual acuity that was correctable to 20/20 in both eyes, and mild bilateral cataracts. (Tr. 98).

On June 26, 2018, plaintiff returned to the Franklin Medical Center for her left knee pain. (Tr. 25-28, 37-39). She reported a history of chronic left knee pain for the past two years that was treated with Celebrex and Prednisone. *Id*. Upon examination, she exhibited 5/5 strength, normal range of motion, stable ligament with no edema or effusion, and ill-defined pain to exam. *Id*. She had no pain in her left hip and negative straight leg raise. *Id*. Ricardo Canals, M.D., noted that her pain was not severe and was relieved with Prednisone. *Id*. She was diagnosed with left knee degenerative joint disease. *Id*.

The court selected only a few treatment notes to illustrate that the Appeals Council's disposition of the additional evidence was well-supported.

In addition, by the time of the ALJ's decision in this matter,[7] paragraph (b) of § 404.970

---

[7] The regulations were amended in December 2016, with an effective date of January 17, 2017, but compliance was not required until May 1, 2017. (81 Fed. Reg. 90994). The ALJ's decision also cited the five-business day requirement for evidence under amended § 404.935(a). (Tr. 71). Further, the Appeals Council stated in its decision that the plaintiff had to show good cause for failure to submit the evidence earlier. (Tr. 1-2). Finally, **Error! Main Document Only.**the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX") specifies that the good cause provisions of the Appeals Council's consideration of additional evidence apply to all Title II claims filed after June 30, 1980. (HALLEX § I-3-3-6 (2017)). Thus, the good cause

11

stated that the Appeals Council will only consider additional evidence under paragraph (a)(5) if the claimant shows good cause under one of three specified rationales for failing to submit the evidence timely (i.e., at least five business days before the ALJ hearing) in accordance with 20 C.F.R. § 404.935. 20 C.F.R. § 404.970(b).

Here, plaintiff proffered no explanation for her failure to submit the evidence to the ALJ for consideration at the hearing level; thus, she remains unable to demonstrate good cause for the belated submission of the additional evidence to the Appeals Council, in the first instance.[8] Under these circumstances, the Appeals Council will not consider the evidence. 20 C.F.R. § 404.970(b).

In connection with her appeal to this court, plaintiff adduced still more treatment records that were not before the ALJ or the Appeals Council, and which post-date the Commissioner's final decision in this matter. In other words, there is no indication that these medical records were part of the administrative record. Thus, at best, the court could remand the matter to the Commissioner for consideration of plaintiff's recently adduced evidence. However, similar to evidence that is submitted to the Appeals Council in the first instance, the court may order additional evidence to be taken before the Commissioner "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citing, 42 U.S.C. § 405(g)). To justify remand, the evidence must be "new," and not merely

---

requirement applies to the instant case. Even if did not, the court would reach the same result. *See* discussion, *infra*.

[8] Ordinarily, "the mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citation omitted).

12

cumulative of what is already in the record. *Id.* (citation omitted). The evidence also must be "material"; *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *Id.* Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *Id.*

Plaintiff's new medical records do not satisfy the foregoing criteria. To the extent they are not copies of earlier treatment notes already in the administrative record, they otherwise date from December 2018 through June 2019. *See* Compl., Exhs.; Pl. Brief, Exhs. However, there is no indication that the treatment records reflect plaintiff's impairments during the relevant period, i.e., as of the date of the ALJ's May 17, 2018, decision in this matter, as opposed to a "later-acquired disability or . . . the subsequent deterioration of the previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (internal quotation marks omitted)). Plaintiff also has not suggested any explanation for her failure to incorporate the "new" evidence into the medical record. *Pierre, supra* (good cause for remand is not met unless plaintiff provides proper explanation to excuse her failure to submit the evidence earlier). The court reiterates that "the mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Pierre*, 884 F.2d at 803 (citation omitted).

In sum, plaintiff has neither established that the post-decision evidence is material, nor demonstrated good cause for failing to incorporate the evidence into the administrative record. *Pierre, supra*.[9] Accordingly, plaintiff is not entitled to remand. *Id*.

---

[9] As the Appeals Council noted, plaintiff's new evidence may provide grounds to support a new application for disability benefits. *See* Tr. 2.

13

## **Conclusion**

The ALJ in this case was tasked with determining whether the claimant was disabled. In so doing, he considered the hearing testimony, the medical records, and expert opinion evidence. The evidence was not necessarily uniform, and according to plaintiff, should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).

Plaintiff's pleas notwithstanding, and no matter how sympathetic the court may be to plaintiff's plight, it is not at liberty to award her disability benefits merely because she has paid into the system over the years. Rather, plaintiff is obliged to establish that she is disabled within the meaning of the Social Security Act. **The court emphasizes that it may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."** *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). The limited and lone issues before the court is whether the Commissioner's determination that plaintiff was not disabled under the Social Security Act is supported by substantial evidence and remains free of legal error. Upon review, the court is satisfied that the Commissioner's decision meets these requirements. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or

response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 7th day of January 2020.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE